# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **ANTOINE D. PEARSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:11cv1037 TCM** |
| | ) | |
| **TROY STEELE and CHRIS** | ) | |
| **KOSTER,**[1] | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review and final disposition of a petition for writ of habeas corpus filed by Antoine D. Pearson ("Petitioner") pursuant to 28 U.S.C. § 2254 to challenge a 2008 judgment following a jury trial.[2] Respondents filed a response [Doc. 6] to the petition, including materials from the underlying state court proceedings [Docs. 9, 14-1, and 16-1].[3]

---

[1] Petitioner is serving consecutive terms of imprisonment as a result of the judgment he is challenging in this habeas proceeding. Because Petitioner is challenging a sentence he will serve in the future, the Court will add the Attorney General for the State of Missouri, Chris Koster, as a respondent in this case. See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

[3] Some of the state court materials identify the minor victim. The Clerk will be directed to place and maintain the legal file, Resp'ts Ex. A [Doc. 9], under seal. The trial transcript, Resp'ts Ex. G [Doc. 14] and the transcript of the evidentiary hearing on the post-conviction motion, Resp'ts Ex. H [Doc. 16-1], have already been placed under seal.

After careful consideration, the Court will deny the petition upon concluding that Petitioner is not entitled to relief because ground two is procedurally defaulted and Petitioner failed to demonstrate either cause and prejudice or actual innocence so as to allow this Court to consider the merits of that procedurally defaulted claim; and because the other three grounds for relief lack merit.

## Background

Petitioner was charged with one count of first-degree statutory sodomy, in violation of Mo. Rev. Stat. § 566.062 (Count I), one count of attempt to commit statutory rape in the first degree, in violation of Mo. Rev. Stat. § 566.032 (Count II), and one count of attempt to commit statutory sodomy in the first degree, in violation of Mo. Rev. Stat. § 566.062. (Indictment, Legal File, Resp'ts Ex. A, at 5-6 [Doc. 9].) The charges were based on allegations that, between October 15, 2006 and December 31, 2006, Petitioner had deviate sexual intercourse, attempted to rape, and attempted to sodomize a girl, P.P. ("Victim"), who was less than twelve years old at the time. Id.

The trial court held a pre-trial hearing after the State provided notice of its intent to use at trial, under Mo. Rev. Stat. § 491.075, statements the minor Victim had made to others, and Petitioner had filed motions challenging that statute and requesting suppression of Petitioner's statements to the police. (See Hr'g Tr., Resp'ts Ex. G, at 5-118 [Doc. 14-1 at 2-30]; Mots. at Legal File, Resp'ts Ex. A, at 7-15 [Doc. 9].) The trial court subsequently denied Petitioner's motion to suppress, and found the relevant statements made by Victim to four others (Lisa Edwards, Luzette Wood, Kelly Patten, and Officer Robert Connell) were reliable

and admissible. (Orders, dated Dec. 13, 2007, Legal File, Resp'ts Ex. A, at 16-18 [Doc. 9].)

Prior to trial, Petitioner again sought the suppression of Petitioner's statements to the police, including a videotaped statement, based in part on his characterization of the videotaped statement as constituting "extremely inflammatory hearsay." (Trial Tr., Resp'ts Ex. G, at 126-30 [Doc. 14-1 at 32-33].) The trial court noted that this request was a suggestion "that [the statements] should be excluded in limine," reiterated its denial of Petitioner's motion to suppress, and acknowledged Petitioner's specific objections could be considered once the State determined if it was going to introduce any statement and, if so, to what extent. (Id. at 128, 130 [Doc. 14-1 at 33].)

During the trial in December 2007, and outside the presence of the jury, Petitioner asked the court not to allow his statements into evidence, either in video form or through police officer testimony, urging that Petitioner "has the right not to be tried for . . . prior bad acts, whether charged or uncharged[;] . . .these statements do not show any relation to the charge at hand"; and, as the State pointed out, Petitioner's statements do not include "confessions or admissions." (Id. at 335-37 [Doc. 14-1 at 86]; see also id. at 340-42 [Doc. 14-1 at 87].) In response, the State acknowledged that, in his statements, Petitioner "does not confess to committing the crimes here involved" but reports that he engaged in sexual conduct of a "nearly identical" nature in the presence of and near Victim, during the "same time frame." (Id. at 338-39 [Doc. 14-1 at 86-87].) The trial court concluded the statements constituted admissions against interest, found that the recent state case cited by Petitioner was not on point, characterized the information in the statements as describing circumstances

-3-

surrounding the crime, and denied Petitioner's motion to exclude the statements Petitioner made in a videotaped recording or to police officers at the time of his arrest. (Id. at 340-41 [Doc. 14-1 at 87].)

Later during trial and outside the presence of the jury, Petitioner objected to various aspects of the video recording of Petitioner's statement to the police that the prosecutor advised he was planning to play for the jury. (Id. at 416-35 [Doc. 14-1 at 106-11].) The trial court sustained Petitioner's objections to, and required the deletion of, any references to Petitioner's prior juvenile court history and to any past sexual abuse he had suffered; required the prosecutor to advise the jury that Victim did not have any sexually transmitted disease; overruled Petitioner's hearsay objections, as well as his objections that the statements were coerced; and disallowed the playing of any other portion of the video recording of Petitioner's statement until after the parties and trial court addressed any other objections to it that Petitioner might have. (Id. at 419, 423-24, 426, 428, 429, 431-33 [Doc. 14-1 at 107-10].)

Before the State sought to admit the videotaped recording of Petitioner's statement to the police and before the State questioned a police officer who had interviewed Petitioner about Petitioner's statement, Petitioner reiterated his objection to the introduction of the statements he made during police interrogation. (Id. at 489-90 [Doc. 14-1 at 124].) Petitioner argued the introduction of such evidence violated Petitioner's constitutional rights to due process, to counsel, and not to incriminate himself; and contended any statement was not an "admission or a confession to the charges at hand" and was offered only to show Petitioner has a propensity to commit the charged offenses. (Id. at 489 [Doc. 14-1 at 124].)

The trial court overruled that objection and admitted the videotaped recording of Petitioner's statement to the police, as well as the police officer's testimony regarding the interview of Petitioner.  (Id. at 489-90 [Doc. 14-1 at 124].)

After the testimony of one of the police officers who had interviewed Petitioner and out of the presence of the jury, Petitioner asked the trial court to strike the officer's testimony because it related statements that were hearsay, were not reliable, were "extremely prejudicial[, were] more prejudicial than probative, and were inflammatory."  (Id. at 565-66 [Doc. 14-1 at 144].)  The trial court denied that motion.  (Id. at 566 [Doc. 14-1 at 144].)

The State presented the testimony of six witnesses whose testimony focused on matters pertaining to the charged offenses (id. at 299-568 [Doc. 14-1 at 77-621]); introduced various exhibits, including three drawings of a male body and a female body, which were used during Wood's interview of Victim (id. at 408 [Doc. 14-1 at 104]); played for the jury the videotape of the police officers' interview of Petitioner (id. at 501-10 [Doc. 14-1 at 127-29]); and presented a court reporter who testified to the accuracy of a transcript she prepared of the video-recording of Wood's interview of Victim (id. at 396-99 [Doc. 14-1 at 101-02]), a recording that was also played for the jury (id. at 411-13 [Doc. 14-1 at 105]).

Victim, who was Petitioner's daughter and four years old at the time of trial, testified that Petitioner had done "bad stuff" to her.  (Id. at 301, 345, 347, 368 [Doc. 14-1 at 77, 88, 89, 94].)  While on the stand, Victim pointed to her vaginal area, what she referred to as her "pie pie," and her buttocks, what she referred to as her "butt," and referred to her mouth, as areas that Petitioner did "bad stuff" to.  (Id. at 345-47 [Doc. 14-1 at 88-89].)  In part, she

testified that Petitioner put "his piepie" in her mouth and "[w]ater came out." (Id. at 348 [Doc. 14-1 at 89].) During cross- and recross-examination by Petitioner's counsel, Victim responded to questions indicating both that Petitioner did not hurt her and that the "bad things" Petitioner did to her "hurt." (Id. at 363-64, 369 [Doc. 14-1 at 93, 94].) Victim also reported that she did not hit Simone Hunter's belly when Simone was pregnant and nodded when asked, "[n]obody told you to hurt the baby?" (Id. at 366 [Doc. 14-1 at 93].)

Lisa Edwards, Victim's grandmother, testified that she lived with Victim and Victim's mother, and was alone with Victim in January 2007 when Victim told her on two separate occasions, in a car and at home, that Petitioner "did a bad thing to" her and indicated that he had hurt her "private area" and "her butt." (Id. at 309-10, 312, 324 [Doc. 14-1 at 79, 80, 83].) Victim also told Edwards that Petitioner had put his "peepee in her mouth" and "water" came out. (Id. at 312-13 [Doc. 14-1 at 80].) In November or December 2006, Edwards testified, Victim had spent some time with Petitioner at his house, and afterward Victim "seemed to be withdrawn" and had changed in that she began "bed wetting, [had] nightmares, [was] very clingy[, and was] masturbating." (Id. at 315-18, 323, 326-29 [Doc. 14-1 at 81, 83, 84].)

Wood was, early in 2007, an interview specialist or forensic interviewer with the Children's Advocacy Center. (Id. at 375-77 [Doc. 14-1 at 96].) She testified that, in that position, she had interviewed over a thousand children ranging in age from 3 through 17; and she described the protocol that she followed while interviewing children. (Id. at 377-80 [Doc. 14-1 at 96-97].) Wood reported what she looks for in an interview and mentioned that certain cues, such as a child's description of sensory details regarding what occurred, are

important "[b]ecause it suggests a child is speaking from his or her own memory instead of something else someone told them to say." (Id. at 389 [Doc. 14-1 at 99].)

On January 23, 2007, Wood interviewed Victim, with no one else in the interview room, but with other adults, not Victim's family members, watching the interview from behind a one-way mirror; and recorded that interview, which recording was admitted into evidence, and played for the jury. (Id. at 382, 384-85, 412-13 [Doc. 14-1 at 97, 98, 105].) Wood identified anatomical drawings of a girl and a boy on which lines were drawn between body parts, specifically the penis, vagina, and buttocks, and words that Victim used to name those parts: "thingy" or "dingading" for penis; "coocoo" for vagina, and "booty" for buttocks. (Id. at 414-15 [Doc. 14-1 at 105-06].) Those drawings were used during Wood's interview of Victim. (Id.)

Wood opined, based on her experience, her training, and her analysis of cues during her interview of Victim, that Victim had not been "told what to say or coached in any way." (Id. at 391 [Doc. 14-1 at 100]; see also id. at 410 [Doc. 14-1 at 104].) During cross-examination, Petitioner's attorney asked Wood whether she had seen any indication that Victim had been coached and Wood testified that she had not. (Id. at 407 [Doc. 14-1 at 104].) After Wood testified and the video recording of Wood's interview of Victim was played for the jury, Petitioner unsuccessfully moved to strike the DVD and Wood's testimony. (Id. at 416 [Doc. 14-1 at 106].)

Kelly Patten, a pediatric medical social worker at St. Louis Children's Hospital, interviews children visiting the hospital's emergency room, including those who may have

suffered physical or sexual abuse; and, at the time of trial, had interviewed over five hundred children in her three-and-one-half years of working there. (Id. at 435-37 [Doc. 14-1 at 111].) She interviews a child who may have been the subject of physical or sexual abuse alone, before the child is seen by other medical care providers. (Id. at 439-40 [Doc. 14-1 at 112].) She looks for cues to help determine whether a child has been told what to say or has been coached. (Id. at 441 [Doc. 14-1 at 112].)

On January 21, 2007, Patten interviewed Victim, with no one else present. (Id. at 442-46, 451 [Doc. 14-1 at 112-13, 115].) Victim told Patten that Petitioner had put "his thing . . . him dingaling" in her mouth, "in her booty and in her potpot," and pointed to her vaginal area when asked what "his thing . . . him dingaling" was, to her buttocks for her "booty," and to her vaginal area for her "potpot." (Id. at 443-45 [Doc. 14-1 at 113].) Victim told Patten that "water came out in my mouth"; and that these things happened at Petitioner's house. (Id. at 444-45 [Doc. 14-1 at 113].) Patten opined that Victim was not coached or told what to say. (Id. at 456 [Doc. 14-1 at 116].)

Sara Nikravan, M.D., an emergency department resident, testified that she practiced medicine at St. Louis Children's Hospital and examined Victim in January 2007, in the presence of an attending physician and a nurse. (Id. at 461-62, 467 [Doc. 14-1 at 117, 119].) They found no external markings or bruising on Victim; her vaginal area and anus were normal with no signs of trauma, abrasions, cuts, rashes, marks, or lesions; and her hymen was in tact. (Id. at 461-62 [Doc. 14-1 at 117].) Dr. Nikravan testified that "[i]n 95 percent of prepubertal children, before puberty, children that are victims of sexual assault [have] no

findings on physical exam" and "the longer you go [between the assault and the examination], the less likely you are to find something" on physical examination. (Id. at 463 [Doc. 14-1 at 118].)

Robert Connell, an officer with the St. John Police Department, whose work as a police officer focuses, in relevant part, on investigations of incidents involving juveniles as victims, conducted a "cursory" interview of Victim on January 21, 2007, with Victim's mother present, to ascertain whether a crime may have been committed. (Id. at 471-75 [Doc. 14-1 at 120-21].) Victim told him that Petitioner had done "bad things to" her, had "stuck his thingy in her mouth and water came out," and had "hurt her booty and her piepie." (Id. at 476-77 [Doc. 14-1 at 121].) When asked to point to and circle the "thingy" on a drawing of a male figure, Victim "pointed to [and drew a circle around] the male genitalia or the penis on the . . . picture." (Id. at 477 [Doc. 14-1].) When asked to circle the "piepie" on a female picture, Victim "circled the . . . vagina on the picture." (Id.) When asked to point to the "booty," Victim stood up and "pointed to her own personal buttocks area." (Id.) Officer Connell brought two anatomically correct dolls to Victim, asked her to point to the "thingy," and she pointed to the "penis on the doll." (Id.) He laid the dolls on the couch where Victim sat, and, while Officer Connell told Victim's mother the interview was complete and they needed to go to Children's Hospital for a "check-up," Officer Connell noticed Victim had placed "the male doll on top of the female doll [and] was making noises as she pressed them together[,] going, 'uh, uh, uh.' [Victim was] asked . . . 'What are you doing?' And she said, 'This is what [Petitioner] does after he puts grease on me.'" (Id. at 478 [Doc. 14-1 at 121].)

Officer Connell testified that Victim's mother did not coach or otherwise get involved with Officer Connell's interview of Victim, other than to tell Victim "not to color on the couch." (Id. at 479 [Doc. 14-1 at 122].)

That afternoon, after his interview with Victim, Officer Connell, along with a detective, interviewed Petitioner after giving him his Miranda rights. (Id. at 480-82, 544 [Doc. 14-1 at 122, 138].) During the interview, Petitioner reportedly started out denying that he was ever alone with Victim, or changed Victim's diapers, or gave Victim a bath, or masturbated in Victim's presence, or showed her his penis, but then stated that she might have seen him and a girlfriend have sex once; that, when Victim was in bed with Petitioner, his penis may have touched Victim "along her legs, her thigh, and her buttocks area"; that he remembered his penis being "erect at times when it was in contact with [Victim], skin on skin"; and that he would "get a wash cloth and wipe her off" when "he got semen on" her from masturbating. (Id. at 498-501; see also id. at 513 [Doc. 14-1 at 127, 130].) Officer Connell testified that, during Petitioner's interview, Petitioner never admitted to putting his penis in Victim's vaginal cavity, anal cavity, or mouth, although Petitioner stated that semen was on Victim's "butt or anus" at some point and he admitted to masturbating on her or around her, although he stated it was not intentional. (Id. at 513-14, 539 [Doc. 14-1 at 130, 137].)

The State rested; Petitioner unsuccessfully moved for a judgment of acquittal at the close of the State's evidence; and the State successfully moved in limine to prevent any

hearsay testimony from Simone Hunter regarding what Victim told her that Victim's mother had said.  (Id. at 567-68 [Doc. 14-1 at 145].)

Petitioner did not testify (see id. at 621-22 [Doc. 14-1 at 158]), and presented the testimony of three witnesses: Simone Hunter, Georgia Hunter, and Shantrell Hunter.[4]  (Id. at 569-621 [Doc. 14-1 at 145-59].)  Simone testified that Petitioner had been her boyfriend since April 2006 and, in July 2006, moved in with her, her parents, her sister, and her aunt. (Id. at 569-70 [Doc. 14-1 at 145].)  Simone stated that Victim stayed with them on occasion, including for about four days during the period "a few days before Halloween" 2006 and again around Thanksgiving 2006.  (Id. at 572-73, 576 [Doc. 14-1 at 146, 147].)  During those visits, Victim slept on the couch in the living room, while Petitioner and Simone slept on a mattress on the floor in the living room.  (Id. at 573, 577-78 [Doc. 14-1 at 146, 147].)  During the Thanksgiving visit, Simone testified, Victim hit Simone in the stomach twice after learning Simone was pregnant.  (Id. at 578-79 [Doc. 14-1 at 147-48].)   Georgia, Simone's mother, testified that Victim stayed at their home for several days around Halloween and Thanksgiving of 2006.  (Id. at 596, 599 [Doc. 14-1 at 152, 153].)  Georgia stated that, during these visits, Victim slept on the couch, while Petitioner and Simone slept on a mattress on the floor, in the living room.  (Id. at 600-01 [Doc. 14-1 at 153].)  Shantrell, Simone's sister, testified that Victim stayed at their home for several days around Halloween and Thanksgiving of 2006; and, when Victim spent the night during those visits, she would sleep

---

[4]  Because Petitioner's three witnesses have the same last name, the Court will refer to each of them by their first name.

on the couch, while Simone and Petitioner slept on a mattress on the floor, in the living room

(Id. at 608, 611, 617-18 [Doc. 14-1 at 155, 156, 157].)  After this testimony, Petitioner rested,

and then unsuccessfully sought a judgment of acquittal at the close of all the evidence.  (Id.

at 623-24 [Doc. 14-1 at 159].)

One of the instructions read to the jury stated in part:

> From time to time the attorneys may make objections.  They have a right to do so and are only doing their duty as they see it.  You should draw no inference from the fact that an objection has been made.

> If the Court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been.  The same applies to exhibits offered but excluded from the evidence after an objection has been sustained.  You will also disregard any answer or other matter which the Court directs you not to consider and anything which the Court orders stricken from the record.

(Instr. No. 2, Legal File, Resp'ts Ex. A, at 29 [Doc. 9].)

During his closing, the prosecutor argued, without objection, that Wood

> is trained to look for kids that possibly are told what to say by their parents. Coached is the term we use sometimes. [Wood] told you [about] her training, her experience, her thousands of interviews with kids. [Victim] wasn't one of those [coached] kids.  [Victim] was talking about things 3 year olds don't talk about.  She did not appear to be coached; told what to say in any way.

(Trial Tr., Resp'ts Ex. G, at 634 [Doc. 14-1 at 162].)

The jury found Petitioner not guilty of the first-degree statutory sodomy offense

charged in Count I and guilty of the other two charged offenses.  (Id. at 667-70 [Doc. 14-1

at 170-71]); Verdicts, Legal File, Resp'ts Ex. A, at 42-44 [Doc. 9].)  After further evidence

was introduced, counsel presented additional argument, and the trial court read more

instructions, the jury recommended a thirteen-year term of imprisonment on Count II and a twelve-year term of imprisonment on Count III. (Trial Tr., Resp'ts Ex. G, at 670-98 [Doc. 14-1 at 171-78]; Verdicts, Legal File, Resp'ts Ex. A, at 51-52 [Doc. 9]).

In his motion for acquittal or in the alternative for new trial ("motion for new trial"), Petitioner argued the trial court had erred in allowing and not striking the testimony of Officer Connell regarding Petitioner's statements to the police; in allowing the showing of the video recording of the police interview of Petitioner; in denying Petitioner's motion seeking to declare as unconstitutional Mo. Rev. Stat. § 491.075 and in allowing Officer Connell, Patten, Wood, and Edwards to testify about statements made to them by Victim; and in overruling Petitioner's objection to the prosecutor's misstatement of evidence during closing argument. (Pet'r Mot. New Trial, Legal File, Resp'ts Ex. A, at 55-62 [Doc. 9].) The trial court subsequently denied Petitioner's motion for new trial, sentenced Petitioner in accordance with the jury's recommendation, and ordered that the sentences run consecutively, for a total term of imprisonment of twenty-five years. (Sentence and J., dated Feb. 19, 2008, Legal File, Resp'ts Ex. A, at 63-65 [Doc. 9]; Sentencing Hr'g Tr., Resp'ts Ex. G, at 700, 705 [Doc. 14-1 at 178, 181].)

In his timely direct appeal, Petitioner raised two points. First, Petitioner cited, in relevant part, **Jackson v. Virginia**, 443 U.S. 307 (1979), and argued that his Fourteenth Amendment right to due process was denied in that there was insufficient evidence to prove his guilt beyond a reasonable doubt because Victim's testimony at trial was so contradictory that it could not be relied on without corroboration. (Pet'r Br., Resp'ts Ex. B, at 14 and 16

-13-

[Doc. 9].)  In his second and final point, Petitioner contended that his Sixth and Fourteenth Amendment rights to a fair trial and to present a defense were violated by the trial court's exclusion of Simone's testimony describing how Victim told Simone that Victim's mother had "ordered" Victim to hit Simone in the stomach when Simone was pregnant, in that it constituted a prior inconsistent statement due to Victim's prior contrary testimony and it supported Petitioner's defense that Victim's mother induced Victim to implicate Petitioner. (Id. at 15 and 24 [Doc. 9].)

The Missouri Court of Appeals for the Eastern District affirmed the conviction and sentence in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision.  (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Dec. 9, 2008, Resp'ts Ex. C).  In its decision, the state appellate court summarized the facts relevant to these claims as follows:

> In late November or early December of 2006, [V]ictim, a three-year-old female, visited [Petitioner], her father, for four days.  During the visit, [Petitioner] attempted to insert his penis into [V]ictim's vagina and into her anus. [V]ictim testified at trial.  Also at trial, the court sustained the state's motion *in limine* to exclude the testimony of Simone. . . , [Petitioner's] girlfriend, that [V]ictim had said that [Victim's] mother had told her to hit [Simone], who was then pregnant, in the stomach.
>
> *   *   *
>
> During direct examination, [V]ictim testified that [Petitioner] did "bad stuff" to her vaginal area and her buttocks.  On cross examination, defense counsel posed the following question: "[Petitioner] didn't really hurt you at all, did he?"  [V]ictim responded, "No."  On redirect, [V]ictim again testified that [Petitioner] did "bad things" to her.  On re-cross, [V]ictim reaffirmed that Defendant did "bad things" to her and also stated that those things hurt.

-14-

*   *   *

After the close of the state's evidence, the state made a motion *in limine* to exclude [Simone]'s testimony about [V]ictim's statements to her that related [V]ictim's mother's statements to [V]ictim.  The following colloquy transpired:

[PROSECUTOR]:  I think I have one thing.  In review of the transcript from the [pretrial] hearing [regarding the admissibility of Victim's statement to four others] when [Simone] testified she mentioned on a couple of occasions hearsay statements.  She mentioned statements [[V]ictim] told her, which is hearsay, that apparently [[V]ictim's mother] had told [[V]ictim], which is double hearsay.  At this point I would make a Motion in Limine pertaining to any hearsay statements made by [Simone].  I have no problem if she testifies as to what she observed or saw, but any statements uttered by other people are hearsay.

THE COURT: Any response?

[DEFENSE COUNSEL]: *I would grant any statements by [[V]ictim's mother] would be hearsay.*  The only thing is that when [[V]ictim] was up here she testified she never hit [Simone's] stomach or never said anything.  If [Simone] would rebut that with statements [[V]ictim] made; *not [[V]ictim's mother]*, but of [[V]ictim], I would say those should come in as rebuttal evidence.

THE COURT: I'm granting the State's Motion in Limine regarding any statements.  I think we have to wait and see what those statements were to see if they do impeach her or contradict what [[V]ictim] said.

[PROSECUTOR]:  Particularly if [Simone's] going to testify to what [[V]ictim's mother] told her.

THE COURT: That's sustained.  Your motion is granted.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Dec. 9, 2008,

Resp'ts Ex. C, at 2, 3, 5-6 [Doc. 9]) (twenty-first, twenty-fifth, twenty-seventh, twenty-ninth,

thirty-second, thirty-third, thirty-fifth, thirty-ninth, forty-first, forty-third, forty-fifth, forty-seventh, and forty-ninth alterations in original).

In resolving Petitioner's first point, that Petitioner's right to due process was denied in that there was insufficient evidence to prove his guilt beyond a reasonable doubt because Victim's testimony at trial was so contradictory that it could not be relied on without corroboration, the Missouri Court of Appeals stated that a victim's testimony, even if uncorroborated, will ordinarily sustain a sexual offense conviction. Id. at 3. A young victim's inconsistent or contradictory statements relating to a sexual experience may, however, necessitate corroborating evidence, the state appellate court noted, when the testimony "is so contradictory and in conflict with physical facts, surrounding circumstances, and common experiences that its validity is doubtful." Id. at 4, 3 (internal quotation marks omitted) (quoting State v. Paulson, 220 S.W.3d 828, 833 (Mo. Ct. App. 2007)). Upon review of the evidence presented at trial in a light most favorable to the verdict, disregarding all contradictory evidence and inferences, and deferring to "the jury's superior position to assess the credibility of witnesses and the weight and value of their testimony," id. at 2-3, the state appellate court concluded corroboration was not necessary and, in any event, Victim's testimony was fully corroborated. Id. at 4. The Missouri Court of Appeals found corroboration in the "consistent, out-of-court" statements Victim had made to Officer Connell, Edwards, and Patten regarding "how [Petitioner] attempted to place his penis inside her vagina and anus"; in Victim's description and demonstration, during Wood's interview, of Petitioner's "attempts to put his penis in her vagina and her anus"; and in Edwards'

-16-

observations of the change in Victim's behavior after Victim visited Petitioner, i.e., that Victim "appeared withdrawn and unhappy, and she began wetting the bed, having nightmares, and masturbating." Id. Therefore, the state appellate court concluded, the State had adduced sufficient evidence to support the two guilty verdicts. Id. at 5.

As to Petitioner's second and final point on direct appeal, which challenged as a violation of his Sixth and Fourteenth Amendment rights to a fair trial and to present a defense the exclusion of Simone's testimony that Victim told Simone that Victim's mother had "ordered" Victim to hit Simone in the stomach when Simone was pregnant, the state appellate court found that review of this point was inappropriate because Petitioner "wholly failed to preserve in the trial court the issue he now asserts on appeal." Id. at 6. In addition to finding that Petitioner did not raise the issue in his motion for new trial, as Petitioner conceded, the Missouri Court of Appeals concluded the challenge was not preserved for other reasons as well. Id. at 5. The state appellate court pointed out that Petitioner "agreed that [Simone] could not testify to . . . [V]ictim's statements about what [V]ictim's mother told [V]ictim." Id. at 6. Additionally, the state court of appeals observed that Petitioner did not refer to any point in Simone's testimony "at which [Petitioner] sought to have [Simone] testify to [V]ictim's statements about what [V]ictim's mother said as a matter of impeachment or contradiction." Id. Finally, that court noted Petitioner had not disclosed

> any place in the record [where] he told the trial court that [Simone]'s testimony about what [Victim] told her that [Victim's] mother told [V]ictim would be admissible on the ground that it supported his defense that [V]ictim was induced by her mother to implicate him, a new theory he presents on appeal.

Id.

The court issued its mandate on January 6, 2009; and Petitioner did not pursue further review of the trial court's judgment. (See docket sheet for State v. Pearson, No. ED91010 (Mo. Ct. App. filed Feb. 29, 2008) (docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited Sept. 9, 2014).)

Petitioner then filed a timely pro se motion for post-conviction relief. (Pet'r Mot., filed Mar. 12, 2009, Legal File, Resp'ts Ex. D, at 3-12). Through counsel, Petitioner subsequently filed an amended motion, including a request for an evidentiary hearing, in which Petitioner argued that his trial counsel provided ineffective representation in two respects. (Pet'r Am. Mot., filed June 29, 2009, Legal file, Resp'ts Ex. D, at 17-45 [Doc. 9].) First, Petitioner urged his Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair and impartial jury, and to the effective assistance of counsel were violated (a) when his trial attorney failed to file a motion in limine to prevent Wood's testimony and failed to object to the prosecutor's questioning about whether Victim had been coached, as well as the prosecutor's closing argument that Victim had not been coached, (b) when his trial attorney failed to obtain an instruction that the jury disregard Wood's opinion about coaching, and (c) when his trial attorney cross-examined Wood about that opinion. (Id. at 19-21.) For his second claim, Petitioner contended that he was denied his Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial, and to the effective assistance of counsel when his trial attorney failed to provide a redacted recording of Petitioner's police interview that excluded statements about uncharged and prior bad acts. (Id. at 21.)

The motion court held an evidentiary hearing on Petitioner's amended post-conviction motion, at which Petitioner and his trial attorney testified. (Order, filed June 25, 2009, Legal File, Resp'ts Ex. D, at 46, 47 [Doc. 9]; Evid. Hr'g Tr., Resp'ts Ex. H [Doc. 16-1].) The motion court subsequently denied that motion. (Mot. Court's Findings of Fact, Conclusions of Law, and J., dated Sept. 8, 2009, Legal File, Resp'ts Ex. D, at 67-71 [Doc. 9].)

Petitioner presented two points in his timely post-conviction appeal. (Pet'r Br., Resp'ts Ex. E, at 17-19.) First, Petitioner argued that his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and the effective assistance of counsel were violated by his trial attorney's failure to file a motion in limine to exclude Wood's testimony, failure to object during the prosecutor's questioning of Wood about whether or not Victim was coached, cross-examination of Wood on the coaching issue, and failure to object during the State's closing argument regarding Wood's opinion on whether or not Victim had been coached. (Id. at 17-18, 21-22.) For his second and final point in his post-conviction appeal, Petitioner contended that his Fifth, Sixth, and Fourteenth Amendment rights to due process, to present a defense, to a fair trial, and to the effective assistance of counsel were violated by his trial attorney's failure to provide a redacted copy of the video-recording of his police interview, that excluded statements regarding his uncharged and prior bad acts, to play for the jury. (Id. at 19-20, 32.)

The Missouri Court of Appeals for the Eastern District affirmed the motion court's decision in a summary order, supplemented by a memorandum sent only to the parties setting

forth the reasons for its decision.  (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated September 14, 2010, Resp'ts Ex. F).

The state appellate court summarized the relevant facts as follows:

> In late November or early December of 2006, [Victim], then three years of age, stayed with [Petitioner], her father, for several days.  During this visit, [Petitioner] . . . attempted to insert his penis into her vagina and anus.

*   *   *

> At trial, Victim's grandmother ([Edwards]) testified that Victim informed her of the abuse in January 2007.  Victim told [Edwards], "[Petitioner] did a bad thing to me," and said "he hurt this," pointing to her buttocks.  Victim raised the topic again a couple days later when [Edwards] was preparing to bathe her.  Again, Victim told [Edwards] that [Petitioner] "did bad things" to her and indicated that he hurt her buttocks.  Victim went on to say, "[Petitioner] put something in here, in my mouth."  Victim told [Edwards] that he put "his peepee" in her mouth and "water came out."  In the weeks . . . following Victim's visit with [Petitioner], [Edwards] observed that Victim was withdrawn and unhappy and exhibited unusual behavior such as wetting the bed, acting "very clingy," and masturbating.

> Officer Robert Connell of the St. John Police Department testified that he received the report of alleged sexual assault and performed a cursory interview of Victim on January 21, 2007.  During the interview, Victim told Officer Connell that [Petitioner] "stuck his thingy in her mouth" and "water came out," and [Petitioner] hurt her "booty" and her "piepie."  As Officer Connell was concluding the interview, he noticed Victim playing with two anatomically correct dolls.  Victim had placed the male doll on top of the female doll and "was making noises as she pressed them together.  She was going, 'uh, uh, uh.'"  When Victim[ was] asked . . . what she was doing, Victim said, "This is what [Petitioner] does after he puts grease on me."  Officer Connell stated that, during his interview with Victim, Victim's mother did not "direct[] her what to say, either verbally or non-verbally."

> Officer Connell also testified about his videotaped interview of [Petitioner], which he conducted on January 21, 2007.  Officer Connell stated that [Petitioner's] interview lasted over six hours.  [Petitioner] initially denied

-20-

any inappropriate sexual contact with Victim. However, as the interview progressed, [Petitioner] made the following admissions: Victim saw him having intercourse, and oral sex with his girlfriend; when he and Victim were sleeping, his penis would touch her legs, thighs, and buttocks; and he had masturbated in bed with Victim and ejaculated on her. Over . . . objections [of Petitioner's trial attorney], the prosecutor played the DVD of the interview for the jury, fast-forwarding through the portions of the interview that were excluded by the trial court.

Kelly Patten, the pediatric medical social worker who interviewed Victim at St. Louis Children's Hospital on January 21, 2007, testified that Victim told her [Petitioner] "put his thing in my mouth, him dingaling." Ms. Patten asked Victim if [Petitioner] put his penis anywhere else on her body, and Victim told her that "he put his thing in her booty and her potpot, and she pointed to her buttocks and vaginal area respectively." Ms. Patten testified that Victim had "very advanced sexual knowledge for a 3 year old," and said she did not believe that Victim had been coached or told . . . what to say.

Luzette Wood, the interview specialist for Children's Advocacy Services of Greater St. Louis who interviewed Victim on January 23, 2007, testified that Victim told her that [Petitioner] put his "dingaling" in her mouth, in her "coocoo," and in her "booty." When Ms. Wood asked Victim to circle the corresponding body parts on anatomical drawings, Victim circled the male penis and the female vagina and anus. Ms. Wood explained that, as a forensic interviewer, she looks for indications that a child's allegations may be based on the coaching of an adult and not on that child's personal experience. When the prosecutor asked Ms. Wood, "[I]n looking at the cues, and your experience and your training, did it appear from your observation that [Victim] was being told what to say or coached in any way?," [Petitioner's trial attorney] objected on the grounds that the question called for speculation. The trial court overruled [that] objection, and Ms. Wood stated that it did not appear that Victim was coached. [Petitioner's trial attorney] briefly revisited with Ms. Wood the matter of coaching when he cross-examined Ms. Wood:

COUNSEL: You also stated to the prosecutor it is not your job to decide if the child is coached?

MS. WOOD: Right. It's the jury's.

COUNSEL: But you did – but you did answer his questions and said you didn't think she was coached?

-21-

MS. WOOD:  Okay.

COUNSEL:  Is that accurate?

MS. WOOD:  You were here.  I think he asked if I saw any indication she had been.

COUNSEL:  And did you?

MS. WOOD:  No.

In closing argument, the prosecutor referred to Ms. Wood's testimony, saying:

[Ms. Wood] is trained to look for kids that possibly are told what to say by their parents.  Coached is the term we use sometimes.  [Ms. Wood] told you [about] her training, her experience, her thousands of interviews with kids.  [Victim] wasn't one of those [coached] kids.  [Victim] was talking about things 3 year olds don't talk about.  She did not appear to be coached; told what to say in any way.

[Petitioner's trial attorney] did not object[, and] addressed the issue of coaching in his closing argument, saying Ms. Wood was a "trained testifier" who "had her arm raised well before she ever got to the judge."

Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated September 14, 2010, Resp't's Ex. F, at 2-5 [Doc. 9] (three footnotes omitted) (eighteenth, twenty-seventh, thirty-second, thirty-third, thirty-fifth, and thirty-seventh alterations in original).

The state appellate court then noted that the post-conviction motion court denied the motion after conducting an evidentiary hearing at which Petitioner and his trial attorney testified.  Id. at 6.  The appellate court summarized the motion court's judgment as follows.

The motion court found that [Petitioner's trial attorney] was not ineffective for improperly dealing with Ms. Wood's testimony that, based on her training and experience, she did not believe Victim had been coached.  The motion court noted that [the attorney] had, in fact, objected to the coaching question, and it

found that "the witness here was not commenting on the truth of the testimony of others but was instead being requested to provide insight into the behavior of an interview subject." The motion court also held that [Petitioner's trial attorney] was not ineffective in failing to provide a redacted DVD because [that attorney] objected to, and the trial court excluded, the portions of the interview relating to [Petitioner]'s prior bad acts, and those portions of the DVD to which [Petitioner's trial attorney] objected were not played for the jury.

Id. at 6-7.

Applying the ineffective assistance of counsel claim standard set forth in **Strickland v. Washington**, 466 U.S. 668, 687 (1984), the state appellate court affirmed the motion court's judgment, concluding Petitioner had failed to show either that counsel's performance was unreasonable or that Petitioner was prejudiced. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated September 14, 2010, Resp'ts Ex. F, at 7-11 [Doc. 9].)

As to Petitioner's claim that his trial counsel provided ineffective assistance in dealing with Wood's testimony that Victim had not been coached, the state appellate court addressed each contention individually and concluded that the attorney had not provided ineffective assistance of counsel. Specifically, the court concluded that a motion in limine is interlocutory in nature and does not conclusively bar the introduction of the challenged evidence, so Petitioner was not prejudiced by his trial attorney's failure to file such a motion; that Petitioner's trial attorney did object, although unsuccessfully, when the prosecutor asked Wood whether she believed Victim was coached, see Trial Tr., Resp'ts Ex. G, at 391 [Doc. 14-1 at 100]; and that a prosecutor has wide latitude in making closing argument and may properly comment on and make reasonable inferences from matters in evidence, such as

Wood's opinion that Victim was not coached. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated September 14, 2010, Resp'ts Ex. F, at 8-9 [Doc. 9].)

Additionally, the Missouri Court of Appeals found there was "overwhelming evidence" of Petitioner's guilt, so Petitioner was not able to establish that he "was prejudiced by . . . Wood's testimony, on direct and cross-examination, that Victim did not appear to have been coached." Id. at 9. In particular, the state appellate court pointed out that

> Victim made several consistent out-of-court disclosures about the abuse, and her disclosures exhibited advanced sexual knowledge for a child of her age. For example, Victim said that [Petitioner] put his penis in her mouth and "water" came out; [Petitioner] hurt her vagina and anus; and [Petitioner] put "grease" on her vagina and anus before penetrating them. Additionally, [Petitioner] made incriminating statements to police. Although he did not confess to the crimes charged, he admitted to having sex and masturbating in the same bed as Victim. He also told police he had touched Victim's thighs, legs, and buttocks with his erect penis and that he had ejaculated on Victim.

Id.

With respect to this point, the state court of appeals further concluded that Wood's challenged testimony did not prejudice Petitioner "because it was cumulative to other evidence admitted at trial," such as Patten's similar opinion testimony and the testimony of Officer Connell that Victim "did not appear to be receiving direction, either verbal or nonverbal, from her mother" during his conversation with Victim. Id. at 10.

For his second point on appeal, that his trial attorney provided ineffective assistance in failing to provide a redacted copy of the video recording of Petitioner's police interview, the state appellate court found the claim lacked merit. Id. at 10-11. The appellate court noted that before trial, counsel moved to suppress the entire recording because, "while

[Petitioner] did make inconsistent and incriminating statements, he did not confess to the crimes charged"; and, when denying the motion, the trial court expressly allowed Petitioner to make objections during trial. Id. at 10. Petitioner's trial attorney objected during trial and the trial court agreed to exclude, "'Anything that refers to [Petitioner's] juvenile record or anything that refers to sexual abuse inflicted upon [Petitioner]." Id. The prosecutor fast-forwarded the video through the excluded portions of the interview. Id. The state appellate court pointed out that Petitioner did "not suggest that any excluded portions of the DVD were played for the jury [but contends] that he was prejudiced" because his trial attorney had to object at trial, which conveyed to "the jury that evidence was being hidden from them." Id. at 10-11. The Missouri Court of Appeals found this proposition to be mere speculation rather than "substantive evidence of counsel's ineffectiveness." Id. at 11 (internal quotation marks omitted) (quoting Weekley v. State, 265 S.W.3d 319, 323 (Mo. Ct. App. 2008)). The appellate court also noted that the trial court properly instructed the jury to disregard information when an objection was sustained or when the trial court directed the jury not to consider it. Id.

The state appellate court issued its mandate on October 7, 2010. (See docket sheet for **Pearson v. State**, No. ED93791 (Mo. Ct. App. filed Oct. 16, 2009) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited on Sept. 9, 2014).) Petitioner did not pursue further review of the post-conviction motion court's judgment. (Id.)

Petitioner then timely filed his federal habeas petition in which he presents four grounds for relief. First, Petitioner argues that his Fourteenth Amendment right to due

process was violated because there was insufficient evidence to support the conviction in that Victim's testimony was so contradictory that it required, but lacked, corroboration. For his second ground, Petitioner urges that the trial court violated his Sixth and Fourteenth Amendment rights to a fair trial and to present a defense by excluding Simone's testimony that Victim told Simone that Victim's mother "ordered" Victim to hit Simone in the stomach when Simone was pregnant. Petitioner contends Victim's statement to Simone was a prior inconsistent statement because Victim had testified to the contrary; and that it supports his defense that Victim's mother induced Victim to implicate Petitioner. Next, Petitioner asserts his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and the effective assistance of counsel were violated by his trial attorney in addressing Wood's testimony. Specifically, Petitioner urges that his trial attorney failed to file a motion in limine regarding Wood; failed to object to the prosecutor's improper questioning of Wood about whether Victim was coached; cross-examined Wood about such coaching; failed to object when, during closing argument, the prosecutor argued that, based on Wood's training, it did not appear that Victim was coached or told what to say; and failed to request an instruction that the jury disregard this aspect of Wood's testimony. For his fourth and final ground, Petitioner urges his Fifth, Sixth, and Fourteenth Amendment rights to due process, to present a defense, to a fair trial, and to the effective assistance of counsel were violated when his trial attorney failed to provide a redacted copy of the video recording of his police interview that excluded statements about uncharged and prior bad acts.

Respondents counter that the second ground for relief is procedurally barred, and that all of Petitioner's grounds for relief are without merit. This Court will first address the procedural issues focused on Petitioner's second ground, and then the merits of any ground for relief that may be addressed on its merits.

## Discussion

Procedural Default. Petitioner urges in his second ground that the trial court violated his Sixth Amendment and Fourteenth Amendment rights to due process by excluding Simone's testimony that Victim told Simone that Victim's mother "ordered" Victim to hit Simone in the stomach when Simone was pregnant. Petitioner argues Victim's statement to Simone was a prior inconsistent statement because Victim had testified to the contrary; and that it supports his defense that Victim's mother induced Victim to implicate Petitioner. Respondents contend that this Court cannot consider the merits of this defaulted claim because the state appellate court did not consider its merits upon finding that Petitioner had failed to preserve the matter for appellate review.

To avoid procedurally defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting, in part, Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)); accord **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories'

in the state courts which he is attempting to raise in his federal habeas petition." **Wemark**, 322 F.3d at 1021 (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). A petitioner must also exhaust his state remedies, by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." **Grass v. Reitz**, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted. **Wemark**, 322 F.3d at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

In Missouri, "[t]o preserve a constitutional question for review on appeal, it must be preserved in the motion for new trial. State v. Flynn, 519 S.W.2d 10, 12 (Mo. 1975)." **State v. Cella**, 32 S.W.3d 114, 117 (Mo. 2000) (en banc) (per curiam). Here, Petitioner did not present in his motion for new trial any error arising from the trial court's order prohibiting Simone from testifying that Victim told Simone Victim's mother had "ordered" Victim to hit Simone in the stomach when she was pregnant. The state appellate court found this issue was "unpreserved for numerous . . . reasons" in addition to Petitioner's concession that it "was not preserved for appeal because it was not asserted in his motion for new trial." The Missouri Court of Appeals denied the point, without considering its merits, upon concluding "plain error review [was] inappropriate" due to Petitioner's failure to preserve it for appellate review. The state appellate court not having reviewed this issue due to Petitioner's failure properly to preserve it for review, the issue is procedurally defaulted.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v. Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not demonstrated any cause for his failure properly to present to the state courts the constitutional claim now set forth in ground two of his federal habeas petition. Because no cause has been established, it is unnecessary to consider whether Petitioner has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

The merits of Petitioner's defaulted claim may be reached, despite the absence of a showing of cause and prejudice for his procedural default, if he establishes that a failure to

consider the claim's merits will result in a fundamental miscarriage of justice. That exception to a claim's procedural bar "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). Petitioner must show not only new evidence, but "that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence). Evidence is "new" for purposes of this test "if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Osborne**, 411 F.3d at 920 (quoting <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner has not submitted any new evidence of his actual innocence so as to permit this Court to consider the merits of Petitioner's defaulted claim in ground two.

Under the circumstances, ground two is procedurally barred due to Petitioner's procedural default and failure to demonstrate either cause and prejudice or a fundamental

miscarriage of justice to support consideration of the merits of that procedurally barred claim. Therefore, the undersigned will deny ground two without further consideration of its merits.

Standard of Review of the Merits of the Claims in Grounds One, Three, and Four. "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions. 28 U.S.C. § 2254." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000) ("**Taylor**"). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786 (2011)), cert. denied, 134 S. Ct. 85 (2013). A state court decision is an unreasonable application of clearly established federal law if it "correctly

-31-

identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; <u>see</u> <u>also</u> **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38, 44 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**,

387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011-12 (8th Cir. 2004)).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels.  **Smulls**, 535 F.3d at 864-65.

Sufficiency of the Evidence - Victim's Allegedly Uncorroborated, Contradictory Testimony (Ground One). Petitioner contends in ground one that his Fourteenth Amendment right to due process was violated because there was insufficient evidence to support the conviction in that Victim's testimony was so contradictory that it required, but lacked, corroboration to support the conviction.  Respondents counter that the state appellate court's decision on direct review that the evidence was sufficient to support the conviction is not either contrary to or an unreasonable application of clearly established federal law. Additionally, to the extent Petitioner may be arguing that the state court incorrectly applied a state evidentiary rule requiring corroboration when a victim's testimony is contradictory, Respondents argue such an argument does not state a claim for federal habeas relief.

Here, the Missouri Court of Appeals based its decision that there was sufficient evidence to support the verdicts upon a review of the evidence presented at trial in a light most favorable to the verdicts, disregarding all contradictory evidence and inferences, and deferring to the jury's assessment of credibility and the weight and value of the witnesses' testimony. This is the manner in which a federal habeas court must review the evidence when resolving a constitutional sufficiency of the evidence claim in a federal habeas proceeding. <u>See</u> **Jackson**, 443 U.S. at 318, 319, 326 (resolution of a due process sufficiency of the evidence claim requires a federal habeas court to view the evidence in a light most favorable to the prosecution, "presume the trier of facts resolved [any] conflicts in favor of the prosecution, and "defer to that resolution" to ascertain whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")

Notably, Petitioner did not present clear and convincing evidence to rebut any of the Missouri Court of Appeals' factual findings, including credibility determinations, regarding this issue. Therefore, this Court defers to those findings.

In Missouri, "[a]ttempted statutory rape in the first degree occurs where a subject, with the purpose of committing the offense, takes a substantial step towards having 'sexual intercourse with another person who is less than fourteen years old,'" **State v. Smith**, 330 S.W.3d 548, 555 (Mo. Ct. App. 2010) (quoting Mo. Rev. Stat. §§ 566.032.1 and 564.011.1), and "[a]ttempted penetration is not required to convict [a person] of attempted rape," **State v. Young**, 781 S.W.2d 212, 216 (Mo. Ct. App. 1989).

A person commits the crime of first-degree statutory sodomy [under Mo. Rev. Stat. § 566.062.1 (2006)] if he has deviate sexual intercourse with another person who is less than fourteen years old.  Deviate sexual intercourse includes any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person. . . . A person is guilty of an attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. . . .  A substantial step is conduct which is strongly corroborative of the actor's purpose to complete the commission of the offense.

**State v. Moore**, 432 S.W.3d 779, 781-82 (Mo. Ct. App. 2014).  Importantly, "the 'attempt' statute . . . does not require that an actual and specific attempt be made to perform each and every element of the crime."  **State v. Kendus**, 904 S.W.2d 41, 43 (Mo. Ct. App. 1995).  Furthermore, "the circumstances of [the attempt] case must be closely examined" because the accused's intent "in an attempt case is rarely susceptible of direct proof."  **Id.**

The Court understands the allegedly inconsistent testimony by Victim pertains to her answers to whether or not Petitioner's actions hurt her.  Here, as the Missouri Court of Appeals found, the then-four-year-old Victim's in-court testimony during the late 2007 trial was supported by others' testimony regarding the "consistent, out-of-court" statements Victim had made to Officer Connell, Edwards, Patten, and Wood describing "how [Petitioner] attempted to place his penis inside her vagina and anus" and by Edwards' testimony regarding her observations of the change in Victim's behavior after Victim visited Petitioner in late 2006.  Having viewed the evidence in a light favorable to the prosecution and having deferred to the jury's resolution of any conflicts in favor of the prosecution, this Court's

review of the record establishes that a rational trier of fact could find the essential elements of the attempted statutory rape and attempted statutory sodomy offenses beyond a reasonable doubt, and the state appellate court's findings are supported by the record. The appellate state court did not incorrectly or unreasonably apply clearly established federal law when concluding that there was sufficient evidence to support the jury's verdict that Petitioner was guilty of those two offenses.

To the extent Petitioner's first ground is a claim based on the state appellate court's consideration of the necessity of corroboration to support Victim's testimony, the corroboration requirement addressed by the state court is a matter of state law, concerns the evidence needed to support a young victim's contradictory testimony, and is, therefore, a state rule of an evidentiary nature. A federal habeas court "may not review any evidentiary rulings unless they implicate federal constitutional rights." **Evans v. Luebbers**, 371 F.3d 438, 443 (8th Cir. 2004) (citing Estelle v. McGuire, 502 U.S. 62, 68 (1991)). Petitioner has not pointed to any federal constitutional right implicated by the corroboration requirement, other than the due process argument discussed above. Under the circumstances, any claim by Petitioner based on the state appellate court's resolution of the state law corroboration requirement is not cognizable in this federal habeas proceeding.

Ground one is denied

Trial Attorney Conduct (Grounds Three and Four). The remaining grounds, grounds three and four, are claims arising out of Petitioner's trial attorney's conduct regarding Wood (ground three) and Petitioner's trial attorney's failure to provide a redacted version of the

video recording of Petitioner's interview by police officers (ground four). Respondent contends Petitioner is not entitled to relief on either of these claims because the Missouri Court of Appeals, on post-conviction review, did not incorrectly or unreasonably apply clearly established federal law in denying each of these claims on its merits.

Elements of an Ineffective Assistance of Counsel Claim. An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). In **Strickland**, supra, the Supreme Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel. The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 687-88, 694. Importantly, to prevail on an ineffective assistance of counsel claim in a § 2254 habeas case, Petitioner

> must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state appellate court] applied Strickland to the facts of his case in an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002) (one citation omitted); **Underdahl v. Carlson**, 381 F.3d 740, 742 (8th Cir. 2004).

For the performance prong of an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) ("**Armstrong**") (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "'indulg[es] a strong presumption that counsel's conduct falls within the wide range of professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, there must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694; **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) ("**Kemna**") (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Kemna**, 590 F.3d at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability, **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether or not there was prejudice, this Court must consider the totality of the evidence, **Kemna**, 590 F.3d at 596.

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

As to ground three, Petitioner has not satisfied his heavy burden to show the incorrectness or unreasonableness of the Missouri Court of Appeals' determination that he failed to establish that his trial attorney provided ineffective assistance of counsel in addressing Wood's testimony. Specifically, Petitioner urges that his trial attorney failed to file a motion in limine regarding Wood; failed to object to the prosecutor's improper questioning of Wood about whether Victim was coached; cross-examined Wood about such coaching; failed to object when, during closing argument, the prosecutor argued that, based on Wood's training, it did not appear that Victim was coached or told what to say; and failed to request an instruction that the jury disregard this aspect of Wood's testimony.

Petitioner pursued this claim in his post-conviction appeal. In concluding Petitioner's trial counsel did not provide ineffective assistance in handling Wood's testimony and the prosecutor's argument related to that testimony, the Missouri Court of Appeals addressed each of Petitioner's contentions individually. That court concluded that trial counsel's failure to file a motion in limine did not prejudice Petitioner because such a motion, even when granted, does not conclusively bar the introduction of the challenged evidence; that Petitioner's trial attorney could not be ineffective for unsuccessfully objecting when the

prosecutor asked Wood whether she believed Victim was coached; and that Petitioner's trial attorney could not be ineffective for failing to make a non-meritorious objection to the prosecutor's reference, in closing argument, to Wood's testimony about coaching, because a prosecutor has wide latitude in making closing argument and may properly comment on and make reasonable inferences from matters in evidence, such as Wood's opinion that Victim was not coached. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Sept. 14, 2010, Resp'ts Ex. F, at 8-9.)

Additionally, the Missouri Court of Appeals found there was "overwhelming evidence" of Petitioner's guilt, so Petitioner was not able to establish that he "was prejudiced by . . . Wood's testimony, on direct and cross-examination, that Victim did not appear to have been coached." Id. at 9. In particular, the state appellate court pointed out that

> Victim made several consistent out-of-court disclosures about the abuse, and her disclosures exhibited advanced sexual knowledge for a child of her age. For example, Victim said that [Petitioner] put his penis in her mouth and "water" came out; [Petitioner] hurt her vagina and anus; and [Petitioner] put "grease" on her vagina and anus before penetrating them. Additionally, [Petitioner] made incriminating statements to police. Although he did not confess to the crimes charged, he admitted to having sex and masturbating in the same bed as Victim. He also told police he had touched Victim's thighs, legs, and buttocks with his erect penis and that he had ejaculated on Victim.

Id.

Finally, the state court of appeals concluded that Wood's challenged testimony did not prejudice Petitioner "because it was cumulative to other evidence admitted at trial," such as Patten's similar opinion testimony and the testimony of Officer Connell that Victim "did not

appear to be receiving direction, either verbal or nonverbal, from her mother" during his conversation with Victim. Id. at 10.

Having reviewed the record, this Court concludes the state appellate court did not incorrectly or unreasonably apply **Strickland** in denying Petitioner's ineffective assistance of counsel claim regarding either the Wood testimony about coaching of the Victim or the prosecutor's argument relating to that testimony. Upon review of the record, the Court concludes, as did the state appellate court, that overwhelming evidence of Petitioner's guilt of the attempted statutory rape and attempted statutory sodomy offenses exists. Petitioner has not provided clear and convincing evidence to rebut any of the factual determinations made by the state courts pertaining to these issues; and the state courts' factual findings on this ineffective assistance of counsel claim are reasonable in light of the evidence presented.

In his reply, Petitioner contends that ascertaining overwhelming evidence of his guilt exists does not satisfy the prejudice standard applicable to an ineffective assistance of counsel claim. This Court disagrees. A federal habeas court must consider the totality of the evidence in deciding whether or not prejudice for an ineffective assistance of counsel claim exists. **Kimmelman**, 477 U.S. at 377; **Kemna**, 590 F.3d at 596; accord **Morales v. Ault**, 476 F.3d 545, 553 (8th Cir. 2007) (overwhelming evidence of guilt can "overc[o]me any trial defects affected by" a petitioner's attorney); **Odem**, 382 F.3d at 851-52.(overwhelming evidence of guilt can result in a conclusion that Strickland's prejudice element is not fulfilled).

Petitioner also urges that he was prejudiced because the State's questioning of Wood "invaded the province of the jury by demanding that [she] make a determination of credibility of [Victim], a duty that resides solely with the Jury." In support of this argument, Petitioner points to the testimony of Simone, Georgia, and Shantrell that Victim was not alone with Petitioner and that Simone and Georgia cared for Victim during Victim's stay with Petitioner, as well as Victim's testimony on cross-examination that Petitioner did not hurt her. As the post-conviction motion court concluded, Wood was not asked to comment on Victim's credibility while testifying during trial, but was asked her opinion, based on her experience and her interview of Victim, about whether or not Victim was coached in conveying the information about what Petitioner had done to Victim. Wood's testimony did not improperly invade the province of the jury. Moreover, the jury had under consideration the testimony of all the witnesses and the responsibility to assess the credibility, weight, and value of the witnesses' testimony. This Court may not revisit those jury determinations in this federal habeas proceeding.

Ground three is denied.

For his fourth and final ground, Petitioner urges his trial attorney provided ineffective assistance of counsel by failing to provide a redacted copy of the video recording of his police interview that excluded statements about uncharged and prior bad acts. Respondents point out that Petitioner pursued this claim in his post-conviction appeal; and argue the state appellate court's denial of the relevant point did not incorrectly or unreasonably apply clearly established federal law.

In denying this point on appeal, the state appellate court noted that Petitioner's attorney had, prior to trial, unsuccessfully moved to exclude the entire video recording, and had, during trial, successfully objected to several portions of the video recording, which portions were not played for the jury. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Sept. 14, 2010, Resp'ts Ex. F, at 10.) The Missouri Court of Appeals pointed out that Petitioner had not identified any portion of the recording that was played for the jury and should not have been. (Id.) Rather, that court characterized Petitioner's contention as challenging his attorney's need to object to the challenged portions of the recording, which, Petitioner argued, left the jury with the impression "that evidence was being hidden from them." (Id. at 10-11.) The state appellate court found that "'[m]ere conclusory speculations of prejudice. . . are not considered substantive evidence of counsel's ineffectiveness.' Weekley . . . , 265 S.W.3d [at] 323 . . . ." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Sept. 14, 2010, Resp'ts Ex. F, at 11.) Finally, the Missouri Court of Appeals noted that the trial court had instructed the jury to disregard objected-to matters, and a jury is presumed to know and follow a court's instructions. (Id.)

Having reviewed the record, this Court concludes that the state appellate court did not incorrectly or unreasonably apply clearly established federal law in rejecting this ineffective assistance of counsel claim. As the Missouri Court of Appeals found, speculation is insufficient to establish an attorney's ineffectiveness. **Becker v. Luebbers**, 578 F.3d 907, 917 (8th Cir. 2009) (there was no unreasonable application of Strickland in the denial of a habeas petitioner's ineffective assistance of counsel claim that was based on speculative

results of "different or further cross-examination" of a witness); **Hunter v. Bowersox**, 172 F.3d 1016, 1024 (8th Cir. 1999) (one of a petitioner's ineffective assistance of counsel claims was properly rejected upon concluding that it was based on "sheer speculation"); see also **Middleton**, 455 F.3d at 854 (a federal habeas claim founded "solely on speculation" was properly denied); **Sargent v. Armontrout**, 841 F.2d 220, 226 (8th Cir. 1988) ("When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden"). This claim relies on Petitioner's speculation that the jury was adversely affected by his trial attorney's objections to portions of the video recording of his police interview.

Ground four is denied.

## Conclusion

After careful consideration, the undersigned will deny Petitioner's federal habeas petition because ground two is procedurally barred, and grounds one, three, and four lack merit.

Accordingly,

**IT IS HEREBY ORDERED** that Chris Koster, the Attorney General of the State of Missouri, is **ADDED** as a Respondent.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file and maintain **UNDER SEAL** the Legal File (Resp'ts Ex. A [Doc. 9]) from the underlying state criminal case.

**IT IS FURTHER ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2014.